Hartman, Appellant, *v.* The Columbia Malleable
Castings Corporation.

Argued October 8, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Charles W. Eaby,* for appellant.

*William J. Blank,* for appellee.

OPINION BY DITHRICH, J., January 14, 1949:

This is an appeal from a judgment entered on a directed verdict for the defendant in an action of assumpsit brought by defendant's employe to recover the sum of $10.50 which plaintiff alleges was illegally withheld from his pay by defendant. The sum in suit represents a per capita tax levied against the plaintiff and the same tax levied against his wife, together with a 5% penalty for failure of plaintiff and his wife to pay their tax on the due date. The tax was levied for the year 1946 by the School District of the Borough of Columbia, Lancaster County, Pa., pursuant to the School Code of May 18, 1911, P. L. 309, Art. V, §542, as finally amended by the Act of May 18, 1945, P. L. 687, § 1 (24 PS § 631), and collected under an order to defendant to withhold the tax from plaintiff's pay, in accordance with the provisions of § 20 of the Local Tax Collection Law of May 25, 1945, P. L. 1050 (72 PS § 5511.20).

The matter was so proceeded with that the court overruled plaintiff's demurrer to defendant's answer and directed the jury to find for defendant. From the refusal of plaintiff's motion for judgment n. o. v. this appeal was taken.

Plaintiff's case rests entirely on the argument that the two Acts, supra, providing for the levy and collection of the tax, are unconstitutional, offending Art. I, § 9 of the Pennsylvania Constitution (". . . nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land").

Article V, §542 of the School Code provides: "Each resident or inhabitant, over twenty-one years of age, in every school district of the second, third, and fourth classes in this Commonwealth, which shall levy such tax, shall annually pay, for the use of the school district in which he or she is a resident or inhabitant, a per capita tax of not less than one dollar nor more than five dollars, as may be assessed by the local school district. *Every husband against whose wife a per capita tax is levied shall be liable for the payment of such tax. Collection thereof from such husband may be made and enforced in the manner provided by law for the collection and enforcement of payment of other taxes owing by such husband, including the collection thereof from the husband's employer.*" (Italicized portion added by the amendment of 1945.)

Section 20 of the Local Tax Collection Law provides: "The tax collector shall demand, receive and collect from all corporations . . . employing persons owing per capita, poll or occupation taxes, . . . upon the presentation of a written notice and demand containing the name of the taxable and the amount of tax due. Upon the presentation of such written notice and demand, it shall be the duty of any such corporation . . . to deduct from the wages . . . of such individual employes . . . a sum sufficient to pay the respective amount of the per capita, poll or occupation taxes, and costs, shown

upon the written notice or demand, and to pay the same to the tax collector of the taxing district. . . ."

The questions are: can the General Assembly, consistently with the constitutional requirements of "the law of the land" (1) provide for the collection of school district per capita taxes of husband and wife from the wages or earnings of the husband in the hands of his employer, without notice and hearing; and (2) impose liability on a husband for a tax owing by his wife, and enforce his liability by attachment of his wages in the hands of his employer?

The two statutes in question were designed to complement one another, as a reading of them demonstrates. Appellant does not dispute the right of the School District to levy a per capita tax, but centers his fire on the method of collection provided for in the two enactments. As stated in his brief of argument, "The only question involved . . . . is the *method* of the *collection* of said tax." The gist of his argument is that his property is taken without affording him any opportunity to contest the taking, and that under the Constitution he is entitled to "the judgment of his peers or the law of the land" before his wages can be taken by the taxing authorities. He also contends that a tax for the school purposes of the taxing district is not a tax for a "public use" as that term is defined in *Klawansky v. Public Service Commission*, 123 Pa. Superior Ct. 375, 381, 187 A. 248.

This second contention respecting the enforcement of the tax can be briefly disposed of. Were it necessary to hold that a tax for school purposes must be for the benefit of the indefinite public, there is authority that a school district, in levying, collecting and spending the taxes raised by it, acts merely as the agent of the Commonwealth in the discharge of its constitutional duty of providing a system of public education. *Minsinger v. Rau*, 236 Pa. 327, 84 A. 902; *Wilson v. Philadelphia School District*, 328 Pa. 225, 195 A. 90; *English v. Robinson Township School District*, 358 Pa. 45, 55 A.

2d 803. See also "'Home-Rule' Taxation in Pennsylvania," 9 U. of Pitt. L. Rev. 171, 200-202. But it is not necessary that a tax meet this test in any specific, tangible form. It is settled that taxes exacted for school purposes within the taxing district are for a public use even though the individual taxpayer may not secure any tangible benefit from the tax. In *Kelly v. Pittsburgh*, 104 U. S. 78, affirming *Kelly v. City of Pittsburgh*, 85 Pa. 170, the taxpayer contended that due process of law was violated by levying and collecting by summary process, taxes on his farm, to be used for city purposes which would be of no direct benefit to him. The Court said at pages 81-82:

"We are unable to see that the taxes levied on this property were not for a public use. *Taxes for schools*, for the support of the poor, for protection against fire, and for water-works, are the specific taxes found in the list complained of. We think it will not be denied by anyone that *these are public purposes in which the whole community* have an interest, and for which, by common consent, property owners everywhere in this country are taxed.

". . . Surely these are all public purposes; and the money so to be raised is for public use." (Emphasis added.)

As to method of collection, the *Kelly* case is cited in Cooley's treatise, The Law of Taxation, in support of the following statements (3 Cooley, Taxation, § 1326, pp. 2617-2618, 4th ed.): "It has long been settled that while one is to be protected in his interests by the 'law of the land,' he has a right to 'the judgment of his peers' only in those cases in which it has immemorially existed, or in which it has been expressly given by law. The clause recited from Magna Charta does not imply the necessity for judicial action in every case in which the property of the citizen may be taken for the public use. On the contrary, a legislative act for that purpose, when clearly within the limits of legislative authority, is of

itself the law of the land. An act for levying taxes and providing the means of enforcement is within the unquestioned and unquestionable power of the legislature."

In the *Kelly* case, the Supreme Court of the United States said, on this subject, at page 80 of 104 U. S.: "Taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings. The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which, in regard to that matter, is, and always has been, due process of law."

The absence of notice and hearing, then, prior to the collection of the tax in controversy, deprived the plaintiff of no constitutional right. Due process of law does not require that a taxpayer have the privilege of contesting a tax before it is levied and collected; ". . . there is no doubt of the state's right to confer on the school district, as its agent, the power to levy and collect the tax. The courts are open to the taxable to challenge the tax, as the plaintiffs are doing in this suit. . . . Due process is not wanting in this case because it has long been settled in this Commonwealth that a plaintiff may go into equity to restrain attempted taxation for want of power to tax: Dougherty, Trustee, v. Philadelphia et al., 314 Pa. 298, 301, 171 A. 583. In such circumstances there is no want of due process": *English v. Robinson Township School District*, 358 Pa. 45, 55, 55 A. 2d 803.

As to the particular method of collection here involved, there is no lack of precedent for tax collection by withholding in Pennsylvania. The corporate loans tax has long been deducted, from the interest due the individual creditors, by the corporation's treasurer as agent for the Commonwealth. Such a method of collection has been upheld against an argument like that here advanced, since the Act levying the tax gives the

taxpayer notice of its assessment and of the method of collection. *Bell's Gap R. Co. v. Pennsylvania*, 134 U. S. 232, affirming *Commonwealth v. Bell's Gap R. Co.*, 16 A. 593; and the related case of *Commonwealth v. Delaware Div. Canal Co.*, 123 Pa. 594, 16 A. 584. The City of Philadelphia's tax on earned income is collected from the employer. *Dole v. Philadelphia*, 337 Pa. 375, 11 A. 2d 163, 11 A. 2d 767. The same municipality's collection of a sales tax from the vendor was upheld in *Blauner's, Inc., v. Philadelphia*, 330 Pa. 342, 348, 198 A. 889, though the vendee was the party taxed. The method of collection, being a customary one, meets all the requirements of due process of law. And it has been shown that this tax was levied and collected for a public use or purpose, contrary to appellant's contention.

Since the tax and its collection are manifestly proper as applied to the husband, the only question posed by the 1945 amendment to § 542 of the School Code is the constitutionality of imposing liability on the husband for his wife's tax. If the husband is properly made liable for the wife's tax, the method of collection would be proper, as in the case of collection of the husband's tax. The husband might have to contest the imposition of liability under certain circumstances, e. g., where there had been a divorce. However, in such cases the remedy of a suit in equity to restrain collection, suggested in the quoted excerpt from the *English* case, or an action at law to recover the tax already collected (such as plaintiff here instituted in a squire's court) would appear to be sufficient to satisfy procedural due process of law. As noted in the preceding discussion, notice and hearing *prior to the levy and collection* of a tax are not indispensable to due process of law.

Furthermore, where the wife is subject to the tax by reason of residence in the taxing district, there is no problem of the propriety of the tax as applied to her. All that is involved, then, the question being thus narrowed, is a determination of the propriety of imposing

upon a husband liability for a tax owed by his wife. If it is within the power of the General Assembly to impose the liability, it would seem to be proper for it to use the same methods of enforcing the liability as are used for the husband's own tax.

The obvious intent of the legislature in the two statutes in question was to provide a method for the effective collection of delinquent per capita taxes in certain cases, and it may fairly and reasonably be presumed that the Act of 1945 was intended to cover a situation where a wife, able to pay, neglects or refuses to pay her per capita tax and has no income or property from which the tax may otherwise be collected.

What was said by the Supreme Court, in holding that an order for a wife's support may be enforced by attachment of her husband's wages, in *Com. ex rel. Deutsch v. Deutsch,* 347 Pa. 66, 67, 31 A. 2d 526, may appropriately be said here: "Whether, in construing the Act of 1921 [1945], we are guided by its literal phraseology, or whether we seek otherwise to ascertain the intention of the legislature in enacting it, our conclusion is the same, namely, that it overrides the Act of 1845 [P. L. 459, § 5, providing that the wages of any laborers, or the salary of any person in public or private employment, will not be liable to attachment in the hands of the employer] . . ." The Court continued on page 68: "It is attachments for *debt* to which the Act of 1845, section 5, relates, but the obligation of a husband to support his wife is not one depending upon a contract . . ." It is dependent upon the marital relationship. The legal duty of a husband to provide for his wife's support and maintenance may be extended by the legislature to impose liability on him for his wife's delinquent per capita school tax, and such liability may be enforced against the wages or salary of the husband in the hands of his employer.

Judgment affirmed.