# In re Bensalem Township Trailer Tax Ordinance

*I. Louis Rubin*, for appellants.

*Barrett & Monroe*, with *James Fitzcharles, 3rd*, for township supervisors.

SATTERTHWAITE, J., September 3, 1952.—This appeal from an ordinance of Bensalem Township challenges the right of the supervisors thereof to levy a monthly tax of $3 on the use and occupancy of house trailers for a consecutive period of 15 days or longer,

under the Act of June 25, 1947, P. L. 1145, 53 PS §2015.1 et seq., as extended to townships of the second class by the Act of September 29, 1951, P. L. 1640.

Testimony taken at the hearing on the appeal was concerned almost entirely with the question as to whether or not appellants have legal standing to question the validity of the ordinance, in view of section 3 of the Act of 1947, supra, 53 PS §2015.3, which authorizes such appeal by, inter alia, "taxpayers of the political sub-division not less than twenty-five in number aggrieved by the ordinance".

The petition for the appeal was signed by 32 persons. It was stipulated by counsel that 15 thereof were taxpayers aggrieved. From the testimony of witnesses, it appeared that an additional 11 of the parties had been residents, occupiers and users of house trailers within the township for a consecutive period of 15 days or more prior to the hearing. This showing alone was sufficient to sustain the standing of appellants in this case. By such proofs they have shown that there were at least 26 parties to the appeal who would be aggrieved by the ordinance, that is, who would, by being subject to the tax in question under its terms, suffer some special injury different from that which affected them and the public generally: North Braddock Borough's Annexation Case, 126 Pa. Superior Ct. 53, 61. Compare Leech Appeal, 170 Pa. Superior Ct. 130, 132. It is therefore unnecessary to consider the collateral matters arising out of the testimony concerning the payment of the separate trailer tax imposed by the School District of Bensalem Township.

Also joining in the appeal were the operators of all the established trailer camps in Bensalem Township, three in number. Although their standing as appellants also was questioned, it would appear that they are proper parties in view of the duties of tax collection imposed upon them by the ordinance in ques-

tion: Moeller v. Conner et al., 32 Erie 115, 117, and cases cited therein. Particularly is this true under the facts of the present case by reason of the personal liability imposed upon the operators of trailer camps by the ordinance upon the failure of the occupants of the trailers to pay the tax therein levied and assessed, as will be more fully hereinafter discussed.

On the merits of the case, the principal point of contention is the construction of the 1951 amendments to the Act of June 25, 1947, P. L. 1145, popularly known as Act No. 481 or the Tax Anything Law. Prior to these amendments, second class townships were not included within the Act of 1947. The 1951 legislature, apparently believing that some, but not all, of the taxing powers conferred upon other municipalities should be extended to second class townships, adopted the Act of September 29, 1951, P. L. 1640, for that purpose. Section 1 thereof made an appropriate amendment to the title of the Act of 1947. Section 2 amended section 1(A) of the Act of 1947 as added and amended by the Act of May 9, 1949, P. L. 898, by the addition of the following:

"Subject to the limitations prescribed in this Act, the duly constituted authorities of townships of the second class may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect, or provide for the levying, assessment and collection of, any one or more of the following taxes, within the limits of such townships:

"1. A per capita tax upon individuals.

"2. A tax on sales involving the transfer of title of real property.

"3. A tax on admissions to places of amusement, athletic events and the like.

"4. A tax on the use or occupancy of house trailers suitable for living quarters.

"No township shall levy a per capita tax for the same period for which it levies an occupation tax."

Section 2 of the 1951 Act also amended subsection (E) of section 1 as inserted by the 1949 Act, relating to limitations on rates of specific taxes, by adding, to the $10 limitation on per capita taxes in subparagraph (a), the words "except in townships of the second class, $5.00"; and also by adding a new subparagraph (g) providing as follows:

"(g) On use or occupancy of house trailers suitable for living quarters, in townships of the second class, $10.00."

The present controversy involves the construction of this subparagraph (g). Does it authorize the supervisors of Bensalem Township to impose such a tax on trailers at a rate exceeding $10 per year? This question arises because the legislature, in enacting the 1951 amendments, did not expressly specify the period to which the $10 limitation was intended to be applicable. The supervisors apparently contend that the $10 ceiling relates only to the taxing period which they may happen to select for the imposition of the tax. They cite no authority for this construction. Appellants, on the other hand, more realistically argue that the legislature intended that the annual aggregate amount of the tax so imposed should not exceed $10. With the later contention we agree.

Under general laws, prior to the 1951 amendments to the Act of 1947, the supervisors of second class townships had no authority to levy a per capita tax or other tax of a similar nature for general revenue purposes: Application of Colerain Township Supervisors, 55 D. & C. 555. Furthermore, it is well established that neither municipalities nor school districts are sovereigns and have no original or fundamental powers of legislation or taxation, being authorized to enact only those legislative and tax ordinances which are provided for by act of assembly; if such ordinance or resolution be unauthorized or in conflict with the

enabling legislation, it is in that respect or to that extent void: Allentown School District Mercantile Tax Case, 370 Pa. 161, 171, and cases cited.

It follows, therefore, that the ordinance here in question must find its authority and justification under the above-quoted provisions of the 1951 amendments to the Act of 1947. This, in turn, involves ascertaining the intention of the legislature when it provided for subparagraph (g) of subsection (E) of section 1 of the Act of 1947, as amended.

In our opinion, it seems clear that the legislature intended that the limitations of subsection (E) should be considered on an annual basis. This is borne out not only by the whole system and scheme of local municipal taxation in Pennsylvania, which is on an annual basis, but also by the very Act of 1947 in question, and its amendments in 1949 and 1951. Undoubtedly, the legislature had annual taxation in mind in passing the 1951 Act and the limitations therein.

General municipal laws all recognize that municipal corporations and school districts are organized, budgeted, financed and operated for annual periods, whether it be for a calendar year or a fiscal year. See, for example, sections 905, 906 and 907 of the Second Class Township Code as amended, revised and reenacted by the Act of July 10, 1947, P. L. 1481, as subsequently amended, 53 PS §19093-905, 906, 907; sections 1709, 1710 and 1711 of the First Class Township Code as amended, revised and reënacted by the Act of May 27, 1949, P. L. 1955, as subsequently amended, 53 PS §19092-1709, 1710 and 1711; sections 1301 and 1302 of the Borough Code as amended, revised and reenacted by the Act of July 10, 1947, P. L. 1481, as subsequently amended, 53 PS §13391, 13392; section 2531 of the Third Class City Code, as amended, revised and reënacted by the Act of June 28, 1951, P. L. 662, as subsequently amended, 53 PS §12198-2531;

the several acts of assembly relating to taxation in cities of the second class, such as the Act of May 12, 1911, P. L. 295, as amended, 53 PS §10031, and section 3, clause III, of the Act of March 7, 1901, P. L. 20, 53 PS §9636; and sections 601, 603, 672 and 679 of the Public School Code of March 10, 1949, P. L. 30, 24 PS §6-601, 6-603, 6-672 and 6-679.

Furthermore, the very legislation in question contemplates, by its own terms, that the taxation thereby authorized should be considered from a yearly point of view. For example, the 1949 amendments to the original Act of 1947 placed a specific limitation on per capita, poll or other similar head taxes in the amount of $10. The 1951 amendment thereto incorporates the same provisions, with a special exception in the case of second class townships to the effect that such taxes should not exceed $5. In view of the well known and commonly accepted principle that per capita, poll or other similar head taxes historically have been levied on an annual basis, and been recognized as such by the legislature under the express provisions of section 2531 of the Third Class City Code, supra, 53 PS §12198-2531; section 3, clause III, of the Act of March 7, 1901, P. L. 20, 53 PS §9636, relating to second class cities, supra, and section 679 of the Public School Code of 1949, 24 PS §6-679, supra, it could scarcely be contended that the limitations on such taxes in the legislation in question were intended to refer to any other period. This is particularly pointed up by the provisions of the 1951 Act in question prohibiting a township from levying per capita taxes "for the same period" as it levies an occupation tax. The latter is clearly an annual tax: section 905 of the Second Class Township Code, 53 PS §19093-905, supra. By analogy the $10 limitation on taxes on the use and occupancy of house trailers appearing in the same subsection should be similarly so construed.

Still further, the whole context of the legislation in question indicates the annual nature of the taxes thereby authorized. The original Act of 1947, in what is now subsection (C) of section 1, limited the aggregate amount of taxes *"annually"* imposed by ordinance or resolution thereunder to a certain formula. The word "annually" was eliminated from this provision by the 1949 amendment but in lieu thereof, the legislature substituted the words "in effect during any *fiscal year."* Similarly, in subsection (D), relating to reduction of rates where taxes might exceed the limitations imposed by the act as amended in 1949, the legislature provided "if, during any *fiscal year*, it shall appear that the aggregate revenues from taxes levied and collected under the authority of this Act will materially exceed the limitations imposed by this Act, . . ." Further in this same subsection, the 1949 legislature provided as follows:

"Tax moneys levied and collected in any *fiscal year* in excess of the limitations imposed by this Act shall not be expended during *such year*, but shall be deposited in a separate account in the treasury of the political sub-division for expenditure in the following *fiscal year.* The *rates of taxes* imposed under this Act *for the following fiscal year* shall be so fixed that the revenues thereby produced, together with the excess tax moneys on deposit as aforesaid, shall not exceed the limitations imposed by this act. . . ." (Italics supplied.)

Even the concluding paragraph of subsection (E), the very one here in question, indicates the same intention. It provides in part, as follows:

"If at any time two political subdivisions shall impose any one of the above taxes on the same person, subject, business, transaction or privilege, located within both such political subdivisions during the same *year* or part of the same *year*, under the authority of

this act . . . [then certain provisions for proration of the tax between the two] . . ." (Italics supplied.)

While this quote refers not only to years, but also to parts of years, that has no significance in the present connection, but obviously relates, in dealing with double taxation, to the possibility of only partial overlapping of tax periods as where a township operates on a calendar year, and a coterminous school district, on a fiscal year.

There have been statements in the opinions of the appellate courts which also confirm the annual nature of municipal taxation. See for example, the language of Justice Bell, in Allentown School District Mercantile Tax Case, 370 Pa. 161, 167, where he stated, in holding invalid a tax imposed under the Tax Anything Law of 1947 in question:

"The Act of March 10, 1949, known as the Public School Code, requires that all school taxes be assessed. during the month of April or May of each year for the ensuing fiscal year; and under this act it is evident that any tax imposed by a school district (whether stated to be an annual tax or not) cannot be a recurring tax nor a tax for longer than the ensuing fiscal year, since it must be reviewed annually by the school directors and may be assessed only if warranted by their budget requirements for the ensuing fiscal year."

The 1951 amendments did not change the nature or character of the taxes authorized to be imposed under the original Act of 1947; it did not repeal or modify prior legislation except to extend partially the benefits thereof to second class townships insofar as certain specified subjects of taxation are concerned. The 1951 Act expressly reënacted subsections (A), (C) and (E) of section 1 as previously amended in 1949, without change except for the addition of the matters hereinabove referred to. In other words, there was no intention on the part of the legislature in any respect to

change the prior legislation; rather the obvious purpose of the 1951 amendments was solely to permit townships of the second class, to a limited degree, to participate in the taxing programs previously enjoyed by other municipalities and school districts. The annual nature of the taxes thereby authorized, insofar as they related to any definite period of time, was fully retained and in no way modified by the 1951 Act.

It seems obvious, therefore, that the legislature, in imposing the $10 limit upon the imposition of taxes on the use and occupancy of house trailers in townships of the second class, meant that such limitations should be effective on a yearly basis.

Our conclusions are further fortified in this respect by the provisions of section 58(3) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558(3). Statutes imposing taxes are to be strictly construed; the words used should be clear and unambiguous; the meaning of the words used is not to be extended by implication, and in cases of doubt the construction should be against the government and in favor of the taxpayer: Breitinger v. Phila. et al., 363 Pa. 512, 515; Scranton v. O'Malley Manufacturing Co., 341 Pa. 200; Sauer Appeal, 167 Pa. Superior Ct. 33, 35.

We are not unmindful of the difficulties and hardships, taxwise, which have been thrust upon local government and school districts in lower Bucks County in the past few years. Nevertheless the duly constituted authorities must act only in the manner provided by law and subject to the limitations upon their authority in accordance with the enabling acts. Compare In re Falls Township Trailer Ordinance of February 5, 1952, 2 Bucks Co. L. Rep. 91. Hardships in particular cases are matters for the legislature, not the courts; the legislature saw fit to place limits upon the taxing powers granted to second class townships.

We cannot overlook and disregard such limitations.

To the extent, therefore, that the within ordinance imposes a tax in excess of an aggregate of $10 per annum, it is unauthorized. We do not mean by this decision, however, to indicate that the ordinance is void or that the provisions thereof imposing a monthly tax of $3 are invalid. On this feature of the case, we hold only that the authorities of Bensalem Township are without legal power to collect more than $10 per annum, per trailer, for the use and occupancy thereof within the township. The provisions of the ordinance for the imposition of a monthly tax of $3 shall remain in full force and effect, unless modified by appropriate action of the supervisors in the form of a new ordinance. But when, during the calendar year, the township shall have collected an aggregate amount of $10 for the use and occupancy of any one trailer therein, the ordinance shall no longer have any application for the balance of the year as to such trailer. This particular power of taxation of the township as conferred by the 1951 amendment shall have then been exhausted, and no further tax can legally be collected. Whether or not the township authorities wish to impose such tax on a monthly basis, so long as they do not exceed the annual aggregate limited by the act of assembly, is of no concern to this court, and we will not interfere therewith.

On behalf of the trailer camp operators, it was further argued on this appeal that the ordinance is invalid because it imposes upon them, without compensation, duties of collection of the tax, making reports and paying over such taxes to the tax collector of the township. They also complain of certain provisions which purport to make them personally liable for such taxes, whether collected from the occupants of trailers or not.

The applicable provisions of the ordinance relating to the first of these questions may be summarized as

follows: The first section thereof, after imposing a monthly tax of $3 per trailer upon the owner, occupier or custodian of such trailer, further requires the owner or proprietor of the land or trailer camp upon which such trailer be located monthly to collect and remit the tax to the tax collector. This section also provides that "said tax to be paid in advance, each month, by the owner, occupier or custodian of said house trailer to the owner or proprietor of the land or trailer camp, as aforesaid".

Section 2 of the ordinance specifies the contents of the monthly reports of any person or corporations authorizing the occupancy of lands by house trailers, said reports to include specified information as to the names, license numbers and dates of arrival and departure of trailers within the preceding month. It further requires that such persons or corporations so authorizing the occupancy of land for trailer purposes "shall pay, with said report, the tax of three dollars ($3.00), as herein levied, for the first month, and shall collect thereafter from the owner or owners or occupier or occupiers of the trailers for every month or fraction thereof as above provided, the sum of three dollars ($3.00) which shall be paid to the collector of taxes of the Township of Bensalem".

The trailer camp operators contend that they cannot legally be required to perform the duties so imposed on them. Unfortunately for their position, however, the law is otherwise. The right of a municipal body to compel any and all persons within its jurisdiction to act, to a reasonable extent, as its agents in collecting taxes authorized under the Tax Anything Law of 1947 and similar legislation such as the Sterling Act of August 5, 1932, P. L. 45 (applicable to the City of Philadelphia), is well settled in view of the broad powers of administration and collection conferred thereby:

Wilkinsburg Borough v. Wilkinsburg Borough School District et al., 365 Pa. 254, 256-257; Blauner's, Inc., et al. v. Philadelphia et al., 330 Pa. 342; City of Philadelphia v. Westinghouse Electric and Manufacturing Company, 55 D. & C. 343. Moreover, while section 4 of the Act of 1947, 53 PS §2015.4, *authorizes* the payment of compensation therefor, such payment is not requisite in order to sustain the validity of the imposition of such duties by the taxing body: Bloom et al. v. City of Scranton, 64 D. & C. 358. While some might feel that compensation should be made, nevertheless, this is a matter for the supervisors in enacting the ordinance and not the courts. It is now recognized and commonly accepted that such duties of reasonable and not unduly inconvenient assistance in the functions of government may be expected of all citizens and are a part of the burden of living and doing business in our complex society. A well known example of the application of this concept is the requirement of the Internal Revenue Code that employers, without reimbursement for frequently burdensome and expensive clerical services, withhold Federal income taxes out of wages and salaries of their employes. In view of these precedents, therefore, we find no legal merit in this argument.

The second contention of the trailer camp operators requires more consideration. They argue that although the ordinance levies the tax upon the owners or occupants of trailers, it makes the owners of the land upon which such trailers are located also liable for the payment thereof, thus in effect imposing one man's liability upon another without his consent.

The provisions in question are contained in the last sentence of section 2 of the ordinance above quoted, requiring the proprietor to pay, with his report, the $3 tax for the first month, and in section 5 thereof relating to penalties. Subsection (*a*) of section 5 provides as follows:

"5. Penalties: (a) Upon the failure of any owner of land or proprietor of trailer camps to make the above required reports or to collect or remit the said taxes, said taxes may be collected together with interest and costs thereon, in summary proceedings before any justice of the peace of the County of Bucks, Pennsylvania. Upon the failure of the owner, occupant, or custodian of any such house trailer to pay the said tax as above provided, the said taxes may be collected together with interest and costs thereon in summary proceedings before any justice of the peace of the County of Bucks, Pennsylvania, from said owner, occupant, or custodian of said trailer or from the owner or proprietor of the land or trailer camp upon which such trailer is located or from both of them."

Although no point was made of it in this case, it should be noted in passing that the first sentence of subsection (a) is ambiguous: it does not specify against whom the summary proceedings therein authorized may be brought. To the extent that it might be thought to authorize proceedings against the trailer occupant who has paid the tax to the trailer camp operator, *as required* by section 1 of the ordinance, it is clearly invalid: Snyder Township School District, 69 D. & C. 10. Manifestly, the township, having made the proprietor its agent for collection purposes, cannot, in the event of his failure to account for and pay over the sums collected, proceed against the taxpayer who has fully discharged his obligation under the ordinance.

The real question, however, is whether the ordinance, by making the proprietors of trailer camps in effect sureties for the tax obligations of their occupants, is so arbitrary and unreasonable as to be a violation of due process and invalid. We are most reluctant so to hold unless absolutely compelled by binding precedent, as it is obvious that the whole program of taxation provided for by this ordinance depends upon the effi-

ciency and thoroughness by which it is administered and enforced by them on behalf of the township. No such binding precedent has been either pointed out to us, or disclosed by our own research. We are not convinced, as a general proposition, that these provisions are so unreasonable and unjust as to require this court, in this proceeding which involves no particular factual record and which almost amounts to an advisory opinion on this phase of the case, to declare them a violation of due process as a matter of law.

In the last analysis, the proprietors of trailer camps not only encourage and make a livelihood from the trailer population which increases the burden of government and necessitates such additional tax revenue, but also are the logical and only practical parties to administer such a tax. They, and they alone, have the requisite information as to the occasion for the imposition of the levies in question; they, and they alone, have any practical control over the arrival and departure of these mobile housing units. In their business, they not only have the right to refuse to admit trailers to their establishments and to compel them to be removed if the occupants do not comply with their regulations, but also have periodic occasion to collect rental for the space and other facilities furnished. They would, as a practical matter, in the usual case, suffer very little inconvenience in establishing as one of the conditions of occupancy the payment of this tax and in collecting it as an item additional to the rent charged. Any slight burden they may be put to thereby would be far outweighed by the much greater interest of the general public, including themselves, in insuring that the onus of taxation is more equitably spread over all residents of the township. The transient nature of such trailers, in the very nature of things, makes it practically impossible for the township in any other way to collect

even a partial contribution toward the expenses of municipal services furnished to all, including the trailer occupants. If there were no penalties or other sanctions imposed against the operators, common experience has demonstrated that they would be less than enthusiastic, as business men, in carrying out this ordinance.

Nor are we convinced, as a practical matter, that the question of personal liability of the trailer camp operators on defaulted taxes due from occupants of trailers on their premises will ever arise if the proprietors conscientiously carry out the duties imposed upon them by the ordinance. Testimony in this very case disclosed that the operators of all the trailer camps in the township have been regularly collecting a similar monthly tax imposed by the school district at the same time as they collect the rent. Their right to collect the tax is clearly conferred upon them by the ordinance. Presumably, they have such control of their premises and the occupation thereof as to permit them to collect and enforce payment, not only of the rent for which they are in business, but also of any other charges which may be due them from their tenants. They no doubt demand and receive compensation from their tenants, either in the rent itself or as an additional item, for utility services provided, for which they, the operators, are responsible to the utility company; they also may demand and receive compensation from such tenants for this tax, for which they are also responsible. Of course they should be liable therefor if they have actually collected the tax; so, too, they should be liable in the event of their failure to collect, absent unusual circumstances. While we can conceive of situations in which it would be so unjust and inequitable to visit this liability upon them as to amount to a violation of due process, such is not the usual case,

and we are therefore not inclined to invalidate this ordinance in the present proceedings. If and when such situations actually arise, they may be considered and adjudicated in light of the particular facts presented.

An analogous situation was presented in Hartman v. The Columbia Malleable Castings Corporation, 164 Pa. Superior Ct. 1, in which the Superior Court sustained the constitutionality of the provisions of the School Code and the Local Tax Collection Law imposing liability upon a husband for per capita school taxes assessed against his wife and authorizing the attachment of wages of the husband therefor. The court found no violation of due process in such provisions as a general rule, expressly recognizing, however, that in particular cases, such as where the parties had been divorced, the husband might have to establish his non-liability in an appropriate legal proceeding.

There is substantial precedent for making the collector of taxes imposed on others personally liable therefor, such as the provisions of the Internal Revenue Code relating to withholding taxes out of salaries, the provisions of the corporate loans tax relating to withholding taxes out of interest payments, and the well-known sales taxes and admissions taxes. Such liability does not necessarily depend upon the collecting party having funds of the taxpayer in his possession. In Philadelphia v. Heinel Motors, Inc., et al., 142 Pa. Superior Ct. 493, for example, a sales tax case involving an automobile dealer, the court made the following statement in the course of the opinion, at page 504:

"From this it will be seen that the defendant's liability to pay the tax is absolute even though the tax is primarily on the customer and it is not necessary to establish negligence in collecting the tax in order for the city to maintain an action against the defendant to recover that which it should have collected."

In view of these considerations, we are unwilling to declare these enforcement provisions of the ordinance invalid in this proceeding. Any such questions relating thereto as may arise on particular and unusual facts not under contemplation at this time may be considered as reserved for such future decision as may be necessary in specific cases coming before us. In any event, even if these provisions be invalid as applied to peculiar factual situations, the remainder of the ordinance would not be invalidated thereby in view of the severability clause of section 8 thereof.

As a final argument, appellants urge that the ordinance is invalid because it imposes a tax on the use and occupancy of house trailers not only for dwelling purposes but also for business purposes, whereas the 1951 amendments to the Act of 1947 authorize such tax only upon the use or occupancy "of house trailers suitable for living quarters". There is no merit in this position. As pointed out by counsel for the supervisors, the quoted phrase of the act of assembly is merely for the purpose of further defining the word "trailers" in distinguishing the type of trailers known as house trailers from other types, such as those used for freight purposes. Furthermore, we cannot say, in the absence of any evidence on the point, that a trailer actually used for business purposes is not "suitable for living quarters".

And now, September 3, 1952, it is ordered, adjudged and decreed that the within appeal be sustained to the extent that the ordinance of the Township of Bensalem within mentioned imposes a tax upon the use and occupancy of house trailers within the township in excess of an aggregate of $10 per annum, and to such extent, the ordinance is hereby adjudicated void and of no effect; in all other respects the within appeal is dismissed and the ordinance is hereby adjudged valid and in full force and effect.