**SAFE HARBOR WATER POWER CORP., Petitioner,**

v.

**Larry P. WILLIAMS, Secretary of Revenue, Respondent.**

**PP & L Inc., f/k/a Pennsylvania Power and Light Company, Petitioner,**

v.

**Larry P. Williams, Secretary of Revenue, Respondent.**

**Interstate Energy Co., Petitioner,**

v.

**Larry P. Williams, Secretary of Revenue, Respondent.**

**PG Energy, Inc., f/k/a Pennsylvania Gas & Water Company, Petitioner,**

v.

**Larry P. Williams, Secretary of Revenue, Respondent.**

**West Penn Power Company, Petitioner,**

v.

**Larry P. Williams, Secretary of Revenue, Respondent.**

**Potomac Edison Company, Petitioner,**

v.

**Larry P. Williams, Secretary of Revenue, Respondent.**

**Monongahela Power Company, Petitioner,**

v.

**Larry P. Williams, Secretary of Revenue, Respondent.**

**PECO Energy Company, Petitioner,**

v.

**Larry P. Williams, Secretary of Revenue, Respondent.**

**PECO Energy Power Company, Petitioner,**

v.

**Larry P. Williams, Secretary of Revenue, Respondent.**

UGI Utilities, Inc., Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

Luzerne Electric of UGI Utilities,
Inc., Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

People Natural Gas Company,
Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

CNG Transmission Corporation,
Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

Allegheny Electric Cooperative,
Inc., Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

Duquesne Light Company, Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

National Fuel Gas Distribution
Corporation, Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

National Fuel Gas Supply Corporation,
Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

New York State Electric & Gas
Corporation, Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

Pennsylvania Power Company,
Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

Ohio Edison Company, Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

Cleveland Electric Illuminating
Company, Petitioner,

v.

Larry P. Williams, Secretary
of Revenue, Respondent.

Toledo Edison Company, Petitioner,

v.

Larry P. Williams, Respondent.

Allegheny Electric Cooperative,
Inc., Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

CNG Transmission Corporation,
Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Peoples Natural Gas Company,
Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

New York State Electric and Gas
Corporation, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

National Fuel Gas Distribution
Corporation, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Duquesne Light Company, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

National Fuel Gas Supply Corporation,
Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

West Penn Power Company, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Monongahela Power Company,
Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Potomac Edison Company, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Interstate Energy Company, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

PP & L Inc., Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Safe Harbor Water Power Corporation,
Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Pennsylvania Power Company,
Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Ohio Edison Company, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Cleveland Electric Illuminating
Company, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Toledo Edison Company, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Luzerne Electric Division of UGI
Utilities, Inc., Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

UGI Utilities, Inc., Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

PECO Energy Company, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

PG Energy, Inc. f/k/a Pennsylvania Gas
& Water Company, Petitioner,

v.

Commonwealth of Pennsylvania,
Respondent.

Commonwealth Court of Pennsylvania.

Argued April 1, 2003.
Decided May 23, 2003.

R. Scott Shearer and Robert L. Weldon, Harrisburg, for Petitioners.

John G. Knorr, Harrisburg, for Respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY President Judge COLINS.

Before the Court are cross-applications for special and summary relief filed by Safe Harbor Water Power Corporation and the other petitioner public utilities (collectively, Utilities), and by the Secretary of Revenue (Commonwealth).

These matters arose when, in December 1998, the Department of Revenue (Revenue) sent the Utilities notices of additional assessment and determination of 1997 public utility realty tax. In consolidated petitions addressed to our original jurisdiction, the Utilities sought declaratory and injunctive relief with respect to the validity of certain portions of the law known as the Public Utility Realty Tax Act (PURTA) [1] and sought to avoid paying the additional assessment. The Commonwealth filed preliminary objections in the nature of a demurrer, and on August 16, 2000 the Court overruled the Commonwealth's demurrers in *Safe Harbor Water Power Corporation v. Judge*, 758 A.2d 259 (Pa. Cmwlth.2000) (*Safe Harbor I* ).[2]

Before the Court reached its decision on the Commonwealth's preliminary objections, Revenue undertook collection of the additional tax, which action resulted in the Utilities having to pay the additional tax. The Utilities filed for refunds, which were denied, and the subsequent appeals from the Board of Finance and Revenue were consolidated with the original jurisdiction cases for disposition on the merits.

In their applications for special and summary relief, the Utilities aver that in *Safe Harbor I,* in the context of overruling the Commonwealth's preliminary objections, this Court already ruled: 1) that Revenue initiated collection procedures with respect to the additional tax when it issued the notice of additional assessment and determination; and 2) that Revenue was required to settle the additional assessment before initiating such "collection procedures." They aver that Revenue implemented the additional tax without settlement and that its subsequent demand for payment violated the statutory regulatory scheme and this Court's decision in *Safe Harbor I.* The Utilities seek immediate refund of the 1997 additional tax with interest, attorney's fees based on Revenue's illegal collection of the additional tax without a settlement, and an injunction against further collection proceedings relating to the additional tax.

The Commonwealth denies that this Court has already determined on the merits that Revenue was required to settle the additional tax before issuing its notice of additional assessment or that the Court ordered Revenue to settle the tax. The Commonwealth seeks a declaration that its actions have been proper.

Under PURTA as it existed in 1997,[3] real estate owned by public utilities and used in the furnishing of utility service was exempt from local taxation, and in lieu of paying local taxes, public utilities paid to the Department of Revenue a realty tax equal to the statutory millage rate multiplied by the net book value [4] of the utility's assets. PURTA Section 1102–A(a), 72 P.S. § 8102–A(a). Each local taxing authority filed a report of the assessed value

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 8101–A—8108–A.

2. On April 2, 2002, the name of Larry P. Williams was substituted for the name of Robert A. Judge as Secretary of Revenue in the case caption.

3. PURTA was amended by the Act of May 12, 1999, P.L. 26. Unless otherwise specified, all cites to PURTA in this opinion refer to the Act as it read in 1997.

4. As defined by Section 1101–A(4), 72 P.S. § 8101–A(4), State taxable value.

of utility realty within its jurisdiction, its real estate tax rate for the applicable fiscal year, and the realty tax equivalent obtained by multiplying the assessed value and tax rate. PURTA Section 1106–A(a), 72 P.S. § 8106–A(a). Revenue then distributed to each reporting taxing authority, its share of the "total realty tax equivalent." PURTA Section 1107–A(b), 72 P.S. § 8107–A(b). The local taxing authorities were to receive no less than the amount the taxing authorities could have imposed on the utility property. Pa. Const. art VIII, § 4. Because pursuant to the statute the utilities assessed their initial PURTA tax liability using the net book value of their utility realty (i.e., less reserves, depreciation, and depletion),[5] and Revenue distributed the PURTA tax to the taxing authorities using local assessed value,[6] the amount paid in and the amount paid out were never the same.[7]

PURTA Section 1104–A(b), entitled Effect of payment; additional assessment, provided that when the amount of tax due to be distributed to the reporting taxing authorities exceeded the amount paid in by the public utilities, Revenue was to calculate a ratio that the public utilities were to apply to their reported net book value, and the utilities were to pay the resulting amount within 45 days.

If in any calendar year the amount determined by the department pursuant to section 1107–A(a)(2) shall exceed the total amount of tax collected pursuant to section 1102–A(a), the department shall determine the ratio which the amount such excess bears to the total State taxable value of all utility realty reported to it pursuant to section 1102–A(b). The department shall notify each reporting public utility of such ratio, and it shall be the duty of such public utility, within forty-five days thereafter, to pay to the State Treasurer, through the Department of Revenue, an additional amount of tax equal to the product of (1) such ratio and (2) the State taxable value shown in its report required by section 1102–A(b). The provisions of section 1102–A(c)[8] shall be applicable to such additional amount of tax.

72 P.S. § 8104–A(b). PURTA Section 1102–A(c) provided for enforcement of the additional tax by any legal means and the imposition of interest and penalties on any unpaid amounts.

Payment of the tax hereby imposed may be enforced by any means provided by law for the enforcement of payment of taxes to the State. If the tax hereby imposed is not paid by the date herein prescribed, or within any extension granted by the department, the unpaid tax shall bear interest at the rate of one per cent per month, and shall in addition

5. PURTA Section 1101–A(4), 72 P.S. § 8101–A(4).

6. PURTA Sections 1101–A(6), 1106–A, and 1107–A, 72 P.S. §§ 8101–A(6), 8106–A, and 8107–A.

7. In their petitions, the Utilities aver that for many years the Utilities paid realty tax that exceeded the amount that Revenue was required to distribute to the local taxing authorities and that Revenue retained the excess. In reality, the excess was the result of public utilities reporting and paying their initial PURTA tax based on the relatively high net book value of their utility realty. Because the payments were not more than the utilities owed, the excess cannot be characterized as an overpayment. Moreover, Revenue was statutorily obligated to distribute to each reporting taxing authority only its share of the total tax equivalent determined from their annual reports, not its share of the total amount of PURTA tax collected. See Southeast Delco School District v. Shapp, 468 Pa. 475, 364 A.2d 292 (1976).

8. Section 1102–A(c) provides for enforcement, interest, and penalties.

be subject to a penalty of five per cent of the amount of the tax, which penalty may be waived or abated, in whole or in part, by the department unless the public utility has acted in bad faith, negligently, or with intent to defraud.

72 P.S. § 8102–A(c).

### *West Penn Power* Decisions

■ In support of their argument that Revenue was required to settle the additional tax before issuing its notices of additional assessment and determination, the Utilities cite the decisions in *West Penn Power Company v. Cohen*, 66 Pa.Cmwlth. 263, 443 A.2d 1366 (1982)(*West Penn Power I* ), *affirmed*, 502 Pa. 25, 463 A.2d 418 (1983) (*West Penn Power II* ), and this Court's opinion in *Safe Harbor I*, overruling the Commonwealth's preliminary objections.

In *West Penn Power I*, the utility sought to compel Revenue to settle its initial PURTA tax returns filed for the years 1969 through 1973. Pursuant to an Attorney General opinion advising that it had a duty to settle such returns,[9] Revenue began prospectively settling all PURTA returns, and West Penn Power filed for refunds for past years. Revenue granted refunds for the tax years 1974 forward, but denied refunds for 1969 through 1973. This Court denied West Penn Power's request for mandamus, holding that the Fiscal Code provision requiring settlement of returns did not apply to PURTA returns. In dicta, we stated that if a utility failed to make a return or if Revenue determined an underpayment, the enforcement provisions of the Fiscal Code "may be utilized." *West Penn Power I*, 443 A.2d at 1369. The Supreme Court affirmed, noting,

Neither the original PURTA nor its 1979 replacement . . . contain any statutory requirement that PURTA tax reports must be settled. Since both the Fiscal Code of 1929 and the Tax Reform Act of 1971 do contain mandatory provisions for the settlement of certain taxes, it is clear that the legislature could and probably would have included such directions if they were deemed appropriate to this type of levy. . . . PURTA, on the other hand, explicitly vests enforcement discretion in the Department of Revenue. . . .

*West Penn II*, 502 Pa. at 31–33, 463 A.2d at 421–22 (citing PURTA Section 1102–A(c), 72 P.S. § 8102–A(c)).

■ The *West Penn Power* decisions clearly do not support the Utilities' contention that Revenue is required to settle its PURTA additional assessment. Although *West Penn Power I* suggested that Revenue might employ the Fiscal Code's enforcement provisions in the event of an underpayment, the Supreme Court in *West Penn Power II* stated in the broadest terms that PURTA by its own terms did not require Revenue to issue settlements, rather it vested Revenue with enforcement discretion. The Supreme Court stated: "We now affirm and hold that, in the absence of any explicit directive in the Public Utility Realty Tax Act (PURTA) . . . mandamus will not lie to compel a formal settlement of PURTA taxes by the Department of Revenue." 502 Pa. at 28, 463 A.2d at 420. To the extent that our opinion in *Safe Harbor I* concluded otherwise, it is inconsistent with *West Penn Power II*, and we overrule it.

### Preclusive Effect of *Safe Harbor I*

■ Next we address the Utilities' argument that the merits of the present

---

**9.** The Attorney General subsequently advised Revenue by letter that settlement was required only where Revenue was unwilling to accept the taxpayer's self-assessment. *West Penn Power I*, 443 A.2d at 1368.

controversy were decided in *Safe Harbor I*. This Court's decision overruling the Commonwealth's demurrer in the present matter was not a final order on the merits requiring appeal. A demurrer tests the legal sufficiency of the complaint. *Simmons v. Township of Moon*, 144 Pa. Cmwlth. 198, 601 A.2d 425, 428 (1991). A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed, as well as all inferences reasonably deducible therefrom, and cannot be sustained unless the complaint indicates on its face that the claim cannot be sustained. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 623, 470 A.2d 86, 91 (1983).

In ruling on the Commonwealth's demurrer, the Court, without benefit of the Commonwealth's answer, was bound to accept as true the Utilities' allegations: 1) that the notice of additional assessment and request for payment within 45 days adversely affected their interests and imposed a substantial tax liability without an adequate explanation of the calculations involved and without the possibility of an appeal; and 2) that in calculating the additional assessments, the Commonwealth failed to take into account any additional amounts collected as a result of settlements and other adjustments affecting the amount of PURTA tax collected that would reduce or eliminate the shortfall. Based on the Utilities' pleadings, the Court concluded that they had stated a cause of action for which relief could be granted and directed the Commonwealth to file answers to the Utilities' petitions. As such, our opinion and order in *Safe Harbor I* could not have been an appealable final determination on the merits. Pa. R.A.P. 341(b)(1).

The law of the case doctrine embodies the concept that a court involved in later phases of a litigated matter should not reopen questions finally decided by another judge of that same court or by a higher court in an earlier phase. *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995). Among the doctrine's related and distinct rules are as follows:

(1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Id.*, 541 Pa. at 574, 664 A.2d at 1331. Departure from the doctrine is permitted in exceptional cases such as an intervening change in the controlling law, substantial change in the facts or evidence, or where the prior holding was clearly erroneous. *Id.*, 541 Pa. at 575–76, 664 A.2d at 1332.

An appellate court's decision overruling a demurrer, in which decision it apparently draws conclusions as to the merits of the appeal, does not preclude that appellate court from drawing different conclusions on the merits of the appeal. The only issue before the court in ruling on a demurrer is the sufficiency of the pleading, and a decision overruling a demurrer can decide no more. However, even if we were to agree, for the sake of argument, that the law of the case doctrine applied in the present case, departure from the doctrine would be justified in this case because any holding in *Safe Harbor I* that Revenue was required to settle the additional tax would have been clearly erroneous.

## PURTA

■ PURTA's plain terms, as that statute read in 1997, support the Commonwealth's position that just as the tax was initially self-assessed and self-paying under Section 1102–A(a) when the Utility multiplied the millage against net book value, the additional tax was equally self-assessing and self-paying in that Revenue supplied the taxpayer with the applicable ratio, "and it shall be the duty of such public utility, within forty-five days thereafter, to pay . . . an additional tax equal to the product of (1) such ratio and (2) the State taxable value shown in its report [i.e., initial PURTA return]. . . ." PURTA Section 1104–A(b), 72 P.S. § 8104–A(b). As the Commonwealth contends, Revenue exercised no discretion with respect to the additional assessments, but rather applied the statute mechanically.

Contrary to the Utilities' characterization, Revenue's notice of additional assessment and determination supplying them with the applicable ratio [10] did not in any respect constitute a "collection" action. By issuing the notice, Revenue properly followed the mandatory language of PURTA Section 1104–A(b) directing it to determine the ratio "which the amount of the excess bears to the total State taxable value of all utility realty reported . . . . and notify each reporting public utility of such ratio. . . ." 72 P.S. § 8104–A(b). The notice's statement that failure to timely remit the additional tax would result in assessment of interest and underpayment penalties constituted an accurate statement of the law. PURTA Sections 1102–A(c) and 1104–A(b), 72 P.S. §§ 8102–A(c) and 8104–A(b).

When the Utilities failed to pay the additional assessment within the applicable 45–day period, the Commonwealth filed liens and issued writs of scire facias in the appropriate courts of common pleas in order to collect the tax. Section 1102–A(c) clearly stated that payment of the tax may be enforced by any means provided by law for the enforcement of payment of taxes to the state, and it clearly stated that the unpaid tax shall bear interest and may bear penalties. 72 P.S. § 8102–A(c).

Although *West Penn Power II* involved initial PURTA tax payments, the Court did address the applicability of settlement procedures under the Fiscal Code to Revenue's enforcement of PURTA payments and assessments. The Court examined the enforcement provision of Section 1102–A(c), and as quoted above, the Court held that in the absence of an explicit directive in the PURTA statute, Revenue was authorized to enforce PURTA payments and assessments by any lawful means. 502 Pa. at 28, 463 A.2d at 420. "The use of settlement procedures for the collection of unpaid taxes are thus within the discretion of the Department under Section 801(d) of the Fiscal Code, 72 P.S. § 801(d)." *Id.*

### Due Process

■ The essence of the Utilities' due process claims is their contention that without settlement of the additional tax, they are without recourse to ensure that the additional tax is based on a correct determination of assessed property valuation and realty tax equivalents, they have no knowledge of the amounts Revenue used to calculate their additional tax liability, and they had no opportunity to participate in the audit of the annual reports filed by the local taxing authorities. They aver that they are entitled to a statutorily mandated and constitutionally required right

---

**10.** In addition to supplying each Utility with the ratio, Revenue's notice took the additional step of multiplying the ratio and the Utility's reported "State taxable value," presumably as convenience.

to appeal the additional assessment without first having to pay the tax.

██ First, we have already determined that PURTA does not mandate that Revenue issue a settlement before it can collect the tax. Second, the courts of this Commonwealth have long held that due process does not require that a taxpayer have the privilege of contesting a tax before it is levied and collected, and the absence of notice and a hearing prior to the collection of a tax does not deprive a taxpayer of its constitutional rights. *Lal v. West Chester Area School District*, 71 Pa.Cmwlth. 236, 455 A.2d 1240 (1983); *Cedarbrook Realty, Inc. v. Nahill*, 35 Pa.Cmwlth. 352, 387 A.2d 127 (1978), *affirmed*, 484 Pa. 441, 399 A.2d 374 (1979); *Hartman v. Columbia Malleable Castings Corporation*, 164 Pa.Super. 1, 63 A.2d 406 (1949). PURTA Section 1107–A, 72 P.S. § 8107–A, obligates Revenue to distribute to each reporting taxing authority, on or before the first day of October of each year, its share of the total realty tax equivalents in accordance with the mandate of Article VIII, Section 4 of the Pennsylvania Constitution, which guarantees the local taxing authority no less than the amount it could have collected upon the public utility realty but for the constitutional exemption. Neither the statute nor the constitution requires that a public utility have the opportunity to challenge the amount of the additional assessment before having to pay it.

We are bound by the plain terms of the statute, the Pennsylvania Constitution, and our Supreme Court's holding in *West Penn Power II*.[11] Accordingly, we grant the Commonwealth's applications for special and summary relief, and deny the Utilities'

applications for special and summary relief.

Judge FRIEDMAN concurs in the result only.

### ORDER

AND NOW, this 23rd day of May 2003, the Commonwealth's applications for special and summary relief in the above-captioned matters are granted, and the Utilities' applications for special and summary relief are denied.

---

11. We note that as of 1998 PURTA permits a utility to object to Revenue's calculation of the millage rate, additional assessment, or rebate by filing a petition for recalculation with the Board of Finance and Revenue within 30 days of the date of the notice of such rate, assessment, or rebate. Amended PURTA Section 1109–A, 72 P.S. § 8109–A.